IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs May 1, 2012

**STATE OF TENNESSEE v. TERRANCE ANTONIO CECIL**

**Direct Appeal from the Circuit Court for Maury County**
**No. 20194   Robert Jones, Judge**

_____

**No. M2011-01210-CCA-R3-CD - Filed July 6, 2012**

_____

A Maury County jury convicted the Defendant, Terrance Antonio Cecil, of assault and false imprisonment, both Class A misdemeanors. The trial court sentenced the Defendant to concurrent sentences of six months incarceration, with all but sixty days on each suspended, followed by ten months on probation. On appeal, the Defendant contends: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred when it considered his prior arrest record in sentencing; and (3) the trial court committed plain error by failing to instruct the jury on the lesser-included offenses of attempted false imprisonment and attempted assault. After a thorough review of the record and relevant authorities, we affirm the trial court's judgments.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ROBERT W. WEDEMEYER, J., delivered the opinion of the court, in which D. KELLY THOMAS, JR. and CAMILLE R. MCMULLEN, JJ., joined.

Larry Samuel Patterson, Jr., Columbia, Tennessee, for the appellant, Terrance Antonio Cecil.

Robert E. Cooper, Jr., Attorney General and Reporter; Rachel West Harmon, Assistant Attorney General; Mike Bottoms, District Attorney General, and Daniel J. Runde, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

**I. Facts**

This case arises from a domestic dispute between the Defendant and his ex-girlfriend, resulting in a Maury County grand jury indicting the Defendant for assault and false

imprisonment. At the Defendant's trial on these charges, the parties presented the following evidence: Keith Fall, an officer with the Columbia Police Department, testified that, on June 26, 2010, at approximately 3:30 a.m., he responded to an "open-line 911 call"[1] from 607½ Santa Fe Pike, which was located in a trailer park. Officer Fall testified that he was not the first officer on the scene when he arrived at 3:38 a.m., but no one had yet entered the trailer home. He knocked on the door of the trailer home, and, after approximately ten minutes, the Defendant answered the door. The officer asked the Defendant if anything had occurred in the trailer home and whether another person was in the trailer home. The officer said that the Defendant told him that everything was "okay" and that his "old lady" was in the trailer home with him. After the Defendant let him into the trailer home, Officer Fall found the victim, Robyn Robledo, lying in bed in one of the bedrooms. Officer Fall testified that she motioned to him from the bed, indicating that she wanted to speak to him alone. Officer Fall stated that he noticed swelling on the victim's eye, on right side of her temple, and on the right side of her shoulder. After speaking with the victim separately from the Defendant, Officer Fall determined that the Defendant had committed the crimes of assault and false imprisonment against the victim. Officer Fall testified that he took the Defendant into custody and transported him to the sheriff's department. The officer requested an ambulance to transport the victim to Maury Regional Hospital. Officer Fall stated that, to his knowledge, the Defendant had no injuries.

The victim, Robyn Robledo, testified that, at the time of this incident, she had been dating the Defendant for seven months. She stated, however, that she and the Defendant had been engaged but that they ended their relationship shortly before this incident. The victim testified that, on June 26, 2010, she went to work at Sun Tan City at 2:00 p.m., her shift ended at 10:00 p.m., and she went to her house to shower to get ready to go to the Defendant's house. Throughout the day, the victim and the Defendant sent text messages to each other. The victim stated that she went to the Defendant's house at about midnight to discuss whether the Defendant had been seeing other women and to return a set of engagement rings to the Defendant. The victim testified that she "had planned on ending" the relationship when she went to visit the Defendant.

When the victim arrived at the trailer home, the Defendant's friend, Shaun Walls, answered the door. The victim testified that she and the Defendant went to his bedroom to talk, and the Defendant was initially cordial with her but then started to speak rudely to her. The victim acknowledged that they had been arguing "for quite some time" before they started physically fighting. The victim stated that, as the argument escalated, she tried to

---

[1] The officer testified that an "open-line 911 call" is "where a caller calls 911 and the dispatcher's answering the phone and nobody answers back, [the dispatcher then says] what's your emergency and there's an open . . . line, but nobody responding to the dispatcher's questions."

2

leave, but the Defendant told her that she wasn't "going anywhere." She testified that the Defendant would not allow her to leave, "came after" her, "grabbed" her, and threw her on the bed, where they began hitting one another.

At that time, the victim "kicked [the Defendant] hard enough to get him off" the victim, and she tried to escape. She stated that the Defendant "grabbed" her by her hair, threw her onto the ground, dragged her into the bathroom, and slammed her against the bathtub. The victim testified that the Defendant then said, "bitch, if you don't get up, I'm going to kick you in your mother f***ing face." She said, after that, the Defendant allowed her to get up and "that was pretty much it." According to the victim, the Defendant struck her "over a dozen times." She explained that she tried to leave three times while they fought, and she did not wish to stay after the altercation, but she did not want to anger him again by telling him she was leaving the trailer home.

The victim stated that she ripped his shirt during the fight, so he went to change his shirt. When the Defendant did so, the victim found her cell phone under the bed and dialed 911. She said that it was dark in the room, so she hid the phone so the Defendant could not see the cell phone's backlight and turned the volume down so the Defendant could not hear the dispatcher's voice. She placed the phone out of the Defendant's sight, but in a location where the dispatcher could hear them talk. She said that they lay in the bed together, talking, and she planned to leave after the Defendant fell asleep.

After approximately fifteen minutes, the victim heard knocking at the door, but the Defendant did not open the door for a "good ten minutes" after the knocking began. The victim said that police officers entered the trailer home, separated the victim and the Defendant, examined the victim in the living room area of the trailer home, and discussed the incident with her. Then, she went to the hospital by ambulance, and police officers transported the Defendant to jail.

The victim testified that her right temple, ear, and eye were swollen, and she suffered bruising and swelling on her upper neck, throat, jaw, and chin areas. Further, she exhibited bruising and swelling on both shoulders, her upper chest area, and along her collarbone. Even after visiting the hospital several times after the incident, the victim suffered from "major headaches" and blurry vision, watering, and twitching in her right eye.

The victim acknowledged that, after the incident, she contacted the Defendant for financial help. She stated that she is a single mother of three children and had no family or friends in this area. She said that, in the past, she had relied on him for financial assistance.

On cross-examination, the victim testified that she had been involved in "a lot of

3

fighting situations" when she was younger. She stated that she did not drink or take any kind of medication or drugs the night of the incident. She also acknowledged that she "blacked out" during the incident with the Defendant, but she stated that the only thing she did not remember from the incident was "who hit who first." She admitted that she sent text messages to the Defendant after the incident, including text messages on November 26, 2010, which was four months after the incident. She stated, however, that she no longer had a romantic relationship with the Defendant.

Shutane "Shaun" Wells testified that he had been "good friends" with the Defendant for fifteen or sixteen years. He stated that he arrived at the Defendant's trailer home between 12:00 a.m. and 12:30 a.m. on the night of the incident. Wells testified that the victim came to the trailer home about an hour or hour and a half after he arrived. He stated that he opened the door for her, she went "strai[gh]t back to [the Defendant's] room," and she left after fifteen or twenty minutes. He stated that, after five minutes, she returned. Wells testified that he sat on the couch in the living room and watched television for about fifteen minutes, and then he went into the extra bedroom to watch television and go to sleep. He said that he fell asleep for "an hour or so," got up to use the bathroom, and saw the police in the living room. He testified that he did not hear or see anything to indicate that the victim and the Defendant had been fighting. He said that, after seeing the police, he went back to the bedroom to sleep because he "didn't want no part of it."

Rachel Thomas testified that she met the victim at work, and they became friends. She stated that they occasionally sent text messages to each other, but they had not been "close" since the incident occurred. Thomas stated that the victim told her about the incident with the Defendant, saying that the Defendant argued and fought with her. She said that she was out of town when the incident occurred, but the victim sent her a text message with the details. Thomas testified that she thought the victim returned the engagement ring set to the Defendant after the incident occurred, but she could not exactly recall what happened with the rings. She stated that she, at one time, dated Wells, but they were no longer dating at the time of the incident. She said that she saw the victim visit the Defendant in November 2010, which was after the assault, at his trailer home. Thomas acknowledged that she saw the victim after the incident, and she saw the bruises on her right shoulder, cheek, and eye.

Donna Howell testified that she was friends with the victim and lived with her when the incident occurred. She stated that she saw injuries on the victim the day after the incident.

Based upon this evidence, the jury convicted the Defendant of assault and false imprisonment. After a hearing, the trial court sentenced the Defendant to concurrent sentences of six months incarceration, with all but sixty days on each suspended, followed

by ten months on probation.  It is from these judgments that the Defendant now appeals.

## II. Analysis

On appeal, the Defendant contends the following: (1) the evidence is insufficient to sustain his convictions; (2) the trial court erred in sentencing when it considered his prior arrest record; and (3) the trial court committed plain error by failing to instruct the jury on the lesser-included offenses of attempted false imprisonment and attempted assault.

### A. Sufficiency of the Evidence

The Defendant contends that the evidence is insufficient to sustain his convictions for assault and false imprisonment, specifically arguing that "his convictions are insufficient to convict him for both [offenses] because they violate due process, and were 'essentially incidental' to the assault."  The Defendant further argues that "the record fails to establish any movement or confinement . . . beyond that which was necessary to consummate the assault and[,] therefore[,] the false imprisonment conviction must be reversed."  The State counters that the proof established that the "[D]efendant's assaultive conduct helped him accomplish the false imprisonment.  Thus, the false imprisonment is not incidental to the assault, and the proof supports both convictions."  We agree with the State.

When an accused challenges the sufficiency of the evidence, this Court's standard of review is whether, after considering the evidence in the light most favorable to the State, "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia,* 443 U.S. 307, 319 (1979); *see* Tenn. R. App. P. 13(e); *State v. Goodwin*, 143 S.W.3d 771, 775 (Tenn. 2004) (citing *State v. Reid*, 91 S.W.3d 247, 276 (Tenn. 2002)).  This rule applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of both direct and circumstantial evidence. *State v. Pendergrass*, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999).  In the absence of direct evidence, a criminal offense may be established exclusively by circumstantial evidence. *Duchac v. State*, 505 S.W.2d 237, 241 (Tenn. 1973).  The jury decides the weight to be given to circumstantial evidence, and "[t]he inferences to be drawn from such evidence, and the extent to which the circumstances are consistent with guilt and inconsistent with innocence, are questions primarily for the jury." *State v. Rice*, 184 S.W.3d 646, 662 (Tenn. 2006) (citations omitted).  "The standard of review [for sufficiency of the evidence] 'is the same whether the conviction is based upon direct or circumstantial evidence.'" *State v. Dorantes*, 331 S.W.3d 370, 379 (Tenn. 2011) (quoting *State v. Hanson*, 279 S.W.3d 265, 275 (Tenn. 2009)).

In determining the sufficiency of the evidence, this Court should not re-weigh or

reevaluate the evidence. *State v. Matthews*, 805 S.W.2d 776, 779 (Tenn. Crim. App. 1990). Nor may this Court substitute its inferences for those drawn by the trier of fact from the evidence. *State v. Buggs*, 995 S.W.2d 102, 105 (Tenn. 1999); *Liakas v. State*, 286 S.W.2d 856, 859 (Tenn. 1956). "Questions concerning the credibility of the witnesses, the weight and value of the evidence, as well as all factual issues raised by the evidence are resolved by the trier of fact." *State v. Bland,* 958 S.W.2d 651, 659 (Tenn. 1997); *Liakas*, 286 S.W.2d at 859. "'A guilty verdict by the jury, approved by the trial judge, accredits the testimony of the witnesses for the State and resolves all conflicts in favor of the theory of the State.'" *State v. Cabbage*, 571 S.W.2d 832, 835 (Tenn. 1978) (quoting *State v. Grace*, 493 S.W.2d 474, 476 (Tenn. 1973)). The Tennessee Supreme Court stated the rationale for this rule:

> This well-settled rule rests on a sound foundation. The trial judge and the jury see the witnesses face to face, hear their testimony and observe their demeanor on the stand. Thus the trial judge and jury are the primary instrumentality of justice to determine the weight and credibility to be given to the testimony of witnesses. In the trial forum alone is there human atmosphere and the totality of the evidence cannot be reproduced with a written record in this Court.

*Bolin v. State*, 405 S.W.2d 768, 771 (Tenn. 1966) (citing *Carroll v. State*, 370 S.W.2d 523 (Tenn. 1963)). This Court must afford the State of Tennessee the strongest legitimate view of the evidence contained in the record, as well as all reasonable inferences which may be drawn from the evidence. *Goodwin*, 143 S.W.3d at 775 (citing *State v. Smith*, 24 S.W.3d 274, 279 (Tenn. 2000)). Because a verdict of guilt against a defendant removes the presumption of innocence and raises a presumption of guilt, the convicted criminal defendant bears the burden of showing that the evidence was legally insufficient to sustain a guilty verdict. *State v. Carruthers*, 35 S.W.3d 516, 557-58 (Tenn. 2000).

As relevant to this case, a person commits assault if he or she "[i]ntentionally, knowingly or recklessly causes bodily injury to another." T.C.A. § 39-13-101(a)(1) (2010). "A person commits the offense of false imprisonment who knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." T.C.A. § 39-13-302(a) (2010).

In the present case, the Defendant argues that the evidence was insufficient to sustain both convictions, specifically that the false imprisonment offense was "essentially incidental" to the assault, so the conviction for false imprisonment violates his due process rights.[2] The

---

[2] In support of his argument, the Defendant cited *State v. Anthony*, 817 S.W.2d 299, 306 (Tenn. 1991), explaining that the Tennessee Supreme Court adopted a due process analysis that inquired as to

evidence presented at trial, however, independently supported both convictions. The victim testified that, when she arrived at the Defendant's trailer home, she and the Defendant went to talk in his bedroom. The discussion escalated into an argument, at which time, the victim tried to leave the trailer home. The Defendant, however, told her that she wasn't "going anywhere." The victim testified that the Defendant would not allow her to leave, "came after" her, "grabbed" her, threw her on the bed, where they began physically fighting with one another. During the fight, the victim "kicked [the Defendant]" in an attempt to escape. At that point, the Defendant "grabbed" her by her hair, threw her onto the ground, dragged her into the bathroom, and slammed her against the bathtub. The victim testified that the Defendant struck her "over a dozen times." She explained that she tried to leave three times while they fought, and she did not wish to stay after the altercation. In order to please the Defendant and protect herself from further attack, she ceased her attempts to leave and lay in the bed with the Defendant. When the Defendant briefly left the bedroom, the victim managed to call 911 on her cell phone, hiding the phone so the Defendant would not know that she had summoned for help. The victim testified that she planned to leave the trailer home after the Defendant fell asleep, but, after fifteen minutes, the police arrived.

An officer with the Columbia Police Department testified that, when he arrived, the Defendant did not open the door until approximately ten minutes after the officer first knocked, he found the victim in the bedroom, and she did not move from the bed until she motioned to the police officer that she wished to speak to him without the Defendant present. The officer observed injuries on the victim and, after further investigation, took the Defendant into custody for the commission of assault and false imprisonment. Further, the victim in this case testified that she attempted to leave the Defendant's bedroom, but the Defendant prevented her from doing so by pulling the victim by her hair, throwing her on the floor, dragging her into the bathroom, and hitting her head on the bathtub. As a result, the victim received substantial injuries. The Defendant proceeded to force the victim to remain in his bedroom. Additionally, the police officer and the victim's friend observed injuries on the victim following her encounter with the Defendant. They testified to bruising and swelling on the victim's body, specifically bruises and swelling on her right temple, right ear, right cheek, both shoulders, upper chest area, and neck area. The victim testified that she suffered from "major headaches," blurry vision, and watering in her right eye.

The jury heard and weighed the testimony of the witnesses and convicted the

---

whether "the confinement, movement, or detention" supporting the kidnapping offense was "essentially incidental" to the accompanying crime "or whether it [was] significant enough . . . to warrant independent prosecution and . . . [,] therefore, sufficient to support such a conviction." Our Supreme Court, however, overruled *State v. Anthony* in a recent opinion, *State v. Jason Lee White*, 362 S.W.3d 559 (Tenn. 2012).

Defendant of assault and false imprisonment. Based on the evidence presented, we will not disturb the jury's finding on appeal.

The Defendant argues that the false imprisonment offense was "essentially incidental" to the accompanying assault offense, but we conclude that the argument is misplaced. *State v. Jason Lee White,* 362 S.W.3d 559 (Tenn. 2012), a recent Tennessee Supreme Court case overruling *State v. Anthony* on the requirement of a separate due process analysis for kidnapping convictions accompanied by a separate felony,[3] holds that the Tennessee legislature did not intend for kidnapping statutes to apply to removal or confinement that is essentially incidental to an accompanying felony, such as rape or robbery. *Id.* at 578. The Supreme Court further opined that whether removal or confinement was or was not essentially incidental to an accompanying "offense" is a jury question, to be reviewed by the appellate courts under a sufficiency of the evidence standard. *Id.*; *see also State v. Michael Alvin Young*, No. E2012-00726-CCA-RM-CD (Tenn. Crim. App., at Knoxville, filed June 2012). We note that the Defendant's conduct in committing the offense of false imprisonment far exceeded the conduct necessary to assault the victim. For the Defendant's argument to succeed under *White*, we would have to conclude that the conduct by the Defendant that "removed or confined" the victim unlawfully so as to "interfere substantially" with the victim's "liberty" did not exceed that which was necessary to accomplish the assault. *See* T.C.A. § 39-13-302 (2010). We respectfully decline to reach that conclusion based on the facts of this case. The evidence is sufficient beyond any reasonable doubt that the Defendant committed the offense of falsely imprisoning the victim. The evidence is also clearly sufficient to support the jury's verdict that the Defendant assaulted the victim.

The Defendant's due process rights were not violated. The jury was correctly instructed. Thus, when applying a *White* analysis to these two misdemeanor offenses, the Defendant's argument fails. Therefore, we affirm the judgment of the trial court and conclude that the evidence was sufficient to support the Defendant's convictions for of false imprisonment and assault. The Defendant is not entitled to relief as this issue.

**B. Sentencing**

---

[3] *White* requires that "juries return kidnapping convictions only in those instances in which the victim's removal or confinement exceeds that which is necessary to accomplish the accompanying felony." *White*, 362 S.W.3d. at 578. In returning such verdicts, *White* requires that juries be properly instructed as to the elements of kidnapping, aggravated kidnapping, and/or especially aggravated kidnapping. *Id.* Specifically, the Supreme Court provided trial courts with a detailed jury instruction on the meaning of "substantial interference" as it is stated in the kidnapping statutes. *See id.* at 580-81.

The Defendant argues that the trial court erred by considering the Defendant's prior arrest record when it sentenced him to split confinement. The State contends that the trial court correctly sentenced the Defendant to concurrent sentences of split confinement. We agree with the State.

Misdemeanor sentences must be specific and in accordance with the principles, purposes, and goals of the Criminal Sentencing Reform Act. T.C.A. §§ 40-35-104, -302 (2010); *State v. Palmer*, 902 S.W.2d 391, 393 (Tenn. 1995). We review misdemeanor sentencing *de novo* with a presumption of correctness. T.C.A. §§ 40-35-401(d), -402(d) (2010). "[T]he presumption of correctness . . . is conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." *State v. Ashby*, 823 S.W.2d 166, 169 (Tenn. 1991). The appealing party bears the burden of overcoming this presumption of correctness and showing that the trial court erred. T.C.A. § 40-35-401(d) (2010), Sentencing Comm'n Cmts.

The misdemeanor offender must be sentenced to an authorized determinant sentence with a percentage of that sentence designated for eligibility for rehabilitative programs. T.C.A. § 40-35-302 (2010). A convicted misdemeanant has no presumption of entitlement to a minimum sentence, and trial courts are afforded considerable latitude in misdemeanor sentencing. *State v. Johnson*, 15 S.W.3d 515, 518 (Tenn. Crim. App. 1999); *State v. Baker*, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997); *State v. Creasy*, 885 S.W.2d 829, 832 (Tenn. Crim. App. 1994).

The misdemeanor sentencing statute requires that the trial court consider the enhancement and mitigating factors when calculating the percentage of the sentence to be served in "actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." T.C.A. § 40-35-302(d) (2010); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). Our Supreme Court has observed that "[i]n addition to the statutory considerations for issuing sentences of confinement, the misdemeanor sentencing statute merely requires a trial judge to consider enhancement and mitigating factors when calculating the percentage of a misdemeanor sentence to be served in confinement." *Troutman*, 979 S.W.2d at 274. This Court has stated:

> In felony sentencing, the trial court has an affirmative duty to *state in the record*, either orally or in writing, which enhancement and mitigating factors it found and its findings of fact. Tenn. Code Ann. § 40-35-209 © (1997); Tenn. Code Ann. § 40-35-210(f) (Supp. 1998); *State v. Troutman*, 979 S.W.2d 271, 274 (Tenn. 1998). In contrast, the misdemeanor sentencing statute only requires that the trial court consider the enhancement and

mitigating factors when calculating the percentage of the sentence to be served "in actual confinement" prior to "consideration for work release, furlough, trusty status and related rehabilitative programs." Tenn. Code Ann. §§ 40-35-302(d) (1997); *Troutman*, 979 S.W.2d at 274.

*State v. Russell*, 10 S.W.3d 270, 278 (Tenn. Crim. App. 1999) (emphasis in original). Our statutory system concerning misdemeanor sentencing is designed to provide trial courts with continuing jurisdiction and a great deal of flexibility. *See* T.C.A. § 40-35-302(d) (2010), Sentencing Comm'n Cmts.; *State v. Boyd*, 925 S.W.2d 237, 244 (Tenn. Crim. App. 1995).

Further, "the trial court is . . . prohibited from relying upon a mere arrest record to enhance a defendant's sentence." *State v. Robinson*, 971 S.W.2d 30, 46 (Tenn. Crim. App. 1997) (citing *State v. Newsome*, 798 S.W.2d 542, 543 (Tenn. Crim. App. 1990)). Tennessee, however, has no per se rule against considering unadjudicated conduct. *Id.*

In the current case, the trial court sentenced the Defendant to concurrent sentences of six months incarceration, with all but sixty days on each suspended, followed by ten months on probation. At the sentencing hearing, which consisted solely of counsel arguments, the trial court commented on the Defendant's criminal record, which contained arrests that were later dismissed as well as at least two misdemeanor convictions and one felony conviction. When addressing the Defendant's prior arrests, the trial court stated that "[the Defendant] seems to pick on people that don't fight back and come in and want to dismiss their cases." Defense counsel responded, "I don't think the Court should consider the dismissals . . . I know where there's a lot of smoke, there's fire . . . ." To which, the trial court stated, "And this smoke never seems to disappear, it just continues to linger." The trial court ultimately made the following response regarding the Defendant's arrest record:

> The Court is concerned about the number of arrests for domestic and aggravated assault that have resulted in dismissals. And I do believe the law prohibits this Court from considering those as prior bad acts even. And, certainly, the Court cannot consider them as prior convictions because they are not convictions.

> The Court is tempted, but I'm not even sure that I can consider them as part of his social history that I think is a factor for consideration in sentencing.

The trial court then stated that it had "considered the evidence received during the trial and at this sentencing hearing, the Defendant's prior record, the principles of sentencing as

adopted both in statutes and case law in Tennessee, the nature and circumstances of the criminal conduct in this case, and given consideration to the fact that it occurred in the [D]efendant's home." The trial court also considered the Defendant's ability to accept responsibility for his actions. During its discussion of the sentencing factors, the trial court stated that "the Court, I believe, is bound to ignore [the Defendant's arrest record] other than for the inference about social and relationship histories."

After review of the record, we determine that the trial court did not err by improperly considering the Defendant's prior arrest record when making its misdemeanor sentencing determination. As the trial court decided the appropriate sentence, it reviewed the Defendant's criminal history, considering the Defendant's actual convictions and his generally troublesome relationship history. The trial court explicitly said that, although the Defendant's arrest record was extensive and included numerous instances of assault, it would constrain itself to the Sentencing Act, "ignor[ing] [the arrest record] other than for the inference about social and relationship histories." We conclude that the trial court, because it thoroughly considered the relevant facts and Sentencing Act principles, properly sentenced the Defendant to concurrent sentences of six months incarceration, with all but sixty days on each suspended, followed by ten months on probation. *See Boyd*, 925 S.W.2d at 244. Therefore, this Court will not disturb the trial court's determination on appeal. *Ashby*, 823 S.W.2d at 169. The Defendant is not entitled to relief as to this issue.

### C. Plain Error

The Defendant argues that the trial court erred by failing to instruct the jury on the lesser-included offenses of attempted assault and attempted false imprisonment. The State counters that the Defendant waived this issue because he failed to provide a written request for an instruction of the lesser-included offenses of attempted assault and attempted false imprisonment as required by Tennessee Code Annotated section 40-18-110. Further, the State notes that the Defendant admits such in his appellate brief. The State, therefore, contends that the Defendant failed to meet its burden to show plain error. We agree with the State.

In Tennessee, "no issue presented for review shall be predicated upon error in the admission or exclusion of evidence . . . unless the same was specifically stated in a motion for a new trial; otherwise such issues will be treated as waived." Tenn. R. App. P. 3(e); *State v. Keel*, 882 S.W.2d 410, 416 (Tenn. Crim. App. 1994). This Court may, however, review an issue which would ordinarily be considered waived if the Court finds plain error in the record. For example, this Court may consider errors affecting the substantial rights of the defendant if review is necessary to do substantial justice. Because, according to Tennessee

11

Rule of Appellate Procedure 13(b), "[r]eview generally will extend only to those issues presented for review," we must review the issue presented by the Defendant herein pursuant to Tennessee Rule of Appellate Procedure 36(b), which states that "[w]hen necessary to do substantial justice, an appellate court may consider an error that has affected the substantial rights of a party at any time, even though the error was not raised in the motion for a new trial or assigned as error on appeal." A court will grant relief for plain error pursuant to Rule 36(b) only when: "(1) the record clearly establishes what occurred in the trial court; (2) the error breached a clear and unequivocal rule of law; (3) the error adversely affected a substantial right of the complaining party; (4) the error was not waived for tactical purposes; and (5) substantial justice is at stake." *State v. Hatcher*, 310 S.W.3d 788, 808 (Tenn. 2010) (citing *State v. Smith*, 24 S.W.3d 274, 282-83 (Tenn. 2000)). If any of these five criteria are not met, we will not grant relief, and complete consideration of all five factors is not necessary when it is clear from the record that at least one of the factors cannot be established. *Id.* The party claiming plain error has the burden of persuading the appellate court. *State v. Banks*, 271 S.W.3d 90, 119 (Tenn. 2008).

Further, the question of whether a given offense should be submitted to the jury as a lesser-included offense is a mixed question of law and fact. *State v. Rush*, 50 S.W.3d 424, 427 (Tenn. 2001) (citing *State v. Smiley*, 38 S.W.3d 521 (Tenn. 2001)). The standard of review for mixed questions of law and fact is *de novo* with no presumption of correctness. *Id.*; *see State v. Burns*, 6 S.W.3d 453, 461 (Tenn. 1999). A trial court has a duty to provide "a complete charge of the law applicable to the facts of the case." *State v. James*, 315 S.W.3d 440, 446 (Tenn. 2010) (quoting *State v. Harbison*, 704 S.W.2d 314, 319 (Tenn. 1986)); *see also* Tenn. R. Crim. P. 30(d)(2). Tennessee law, however, does not mandate that any particular jury instructions be given so long as the trial court gives a complete charge on the applicable law. *See State v. West*, 844 S.W.2d 144, 151 (Tenn. 1992); *see also State v. Robert Lee Pattee*, No. M2000-00257-CCA-R3-CD, 2001 WL 467903, at *10 (Tenn. Crim. App., at Nashville, May 3, 2001), *no Tenn. R. App. P. 11 application filed* (stating that trial courts are not required to instruct the jury on all lesser-included offenses of the charged offense).

"In applying the lesser-included offense doctrine, three questions arise: (1) whether an offense is a lesser-included offense; (2) whether the evidence supports a lesser-included offense instruction; and (3) whether an instructional error is harmless." *State v. Allen*, 69 S.W.3d 181, 187 (Tenn. 2002). In *State v. Burns*, 6 S.W.3d 453 (Tenn. 1999), our Supreme Court adopted the following two-step process for determining if the evidence justifies a jury instruction on the lesser-included offense:

First, the trial court must determine whether any evidence exists that

12

reasonable minds could accept as to the lesser-included offense. In making this determination, the trial court must view the evidence liberally in the light most favorable to the existence of the lesser-included offense without making any judgments on the credibility of such evidence. Second, the trial court must determine if the evidence, viewed in this light, is legally sufficient to support a conviction for the lesser-included offense.

*Id.* at 469.

In the present case, the Defendant was indicted for assault, which occurs if a person "[i]ntentionally, knowingly or recklessly causes bodily injury to another;" and false imprisonment, which occurs if a person "knowingly removes or confines another unlawfully so as to interfere substantially with the other's liberty." *See* T.C.A. § 39-13-101(a)(1)(2010); T.C.A. § 39-13-302(a) (2010). For attempt of both offenses, Tennessee law states the following:

> (a) A person commits criminal attempt who, acting with the kind of culpability otherwise required for the offense:
>
> (1) Intentionally engages in action or causes a result that would constitute an offense, if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.
>
> (b) Conduct does not constitute a substantial step under subdivision (a)(3), unless the person's entire course of action is corroborative of the intent to commit the offense.
>
> (c) It is no defense to prosecution for criminal attempt that the offense attempted was actually committed.

T.C.A. § 39-12-101 (2010).

The trial court in this case found that the proof did not support the lesser-included

offenses of attempted assault and attempted false imprisonment. The trial court noted that record established that the victim had clear injuries, including numerous bruises and swollen areas on her body, which "amount to clear evidence, evidence beyond a reasonable doubt of . . . an assault." Further, the trial court found that the facts and circumstances of the case supported the offense of false imprisonment because it "would only take a few seconds to actually consummate the crime." We agree with the trial court that the evidence presented at trial showed that the victim received injuries as a result of the attack by the Defendant and that the Defendant forced the victim to remain in his bedroom, despite her attempts to escape. Therefore, the trial court did not err by not including the lesser-included offenses in its instructions to the jury.

As a result, the Defendant has failed to show that the trial court breached "a clear and unequivocal rule of law," and the Defendant has not shown that "substantial justice" is at stake. *See Hatcher*, 310 S.W.3d at 808. Therefore, the trial court did not commit "plain error." The Defendant is not entitled to relief on this issue.

## III. Conclusion

After a thorough review of the record and relevant authorities, we affirm the judgments of the trial court.

_____
ROBERT W. WEDEMEYER, JUDGE

14